EAMES VACUUM BRAKE COMPANY, Respondent, v. THOMAS PROSSER
and THOMAS PROSSER, JR., Appellants.

*Contract — when it will not be reformed — receipt of money by a creditor after illegal charges have been deducted — when not an accord and satisfaction.*

Where the reformation of a contract is demanded on the ground that through mutual mistake it did not express the intention of the parties thereto, and it appears that the contract is as one of the parties thereto intended to make it, the court will not reform the instrument.

Where sales agents hold a promissory·note of a corporation under an agreement that they are to pay themselves from collections which they make (such collections to be applied on such note until it is paid), and they thereafter remit a balance to the corporation, after deducting a commission which the corporation notifies them is illegal, the receipt by the corporation of such money in partial payment, coupled with its statement that such sums would be received on account, does not estop the corporation from recovering the sums withheld by the agents. Such a transaction is not an accord and satisfaction.

APPEAL by the defendants, Thomas Prosser and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Jefferson on the 26th day of September, 1894, upon the report of a referee, and also from an order entered in said clerk's office on the 21st day of August, 1894, granting the plaintiff an additional allowance.

On the 22d day of January, 1877, an agreement was entered into between the plaintiff, the Eames Vacuum Brake Company, and the defendants, under which the defendants were to act as agents for the plaintiff in the sale of certain brakes manufactured by the company; this agreement provided, among other things, that the defendants should receive a commission of ten per cent upon all sales so made by them for the company.

Controversies having subsequently arisen between the parties, the litigation was settled by the execution of an agreement, dated May 23, 1883, which contained, among other provisions, the following: " In consideration thereof, the said Eames Vacuum Brake Company ·hereby agree to pay to the said Prossers for their advances in said business and for said property as follows: The said company to give to the said Prossers its note, dated May 19th, 1883, on interest at four months, to be satisfactorily endorsed, for the amount due them

on account of advances, being hereby agreed and fixed at twenty-five thousand four hundred fifty-two dollars and ninety-eight one-hundredths ($25,452.98), said Prossers to hold said note and collect the outstanding accounts, and as fast as collections and those for orders unfilled at this date are made, to apply on said note till paid, and when note is paid the balance collected of said accounts to be paid, and those not collected to be transferred to the company. And the company to pay to the said Prossers $10,000 in cash; said note and cash to be given and paid in fifteen days from this date, and upon such note and cash being given and paid, the transfers, assignments and delivery of the above property to be given by the said Prossers as aforesaid. The said Prossers to use all due diligence to collect said accounts. All orders up to this date unexecuted to be filled through the said Prossers as sales agents as before."

This action was brought to recover collections alleged to have been unlawfully withheld by the defendants and retained to their own use.

The answer of the defendants alleged that the defendants' right to retain commissions under the sales contract of January 22, 1877, at the rate of ten per cent was reserved as stated therein, and that the omission to state the fact of such reservation specifically in the agreement of May 23, 1883, was because of the mutual mistake of the parties thereto, and the answer demanded that the agreement of May 23, 1883, be reformed so as to provide that the defendants should receive and retain commissions at the rate of ten per cent as provided in the contract of January 22, 1877.

Payments were made by the defendants under a claim on their part to retain commissions (which were deducted on making such payments) which commissions the plaintiff claimed the defendants were not entitled to, but the money thus paid was taken by the plaintiff with a statement that it would be received on account.

*Watson M. Rogers* and *John Lansing*, for the appellants.

*Elon R. Brown* and *A. H. Sawyer*, for the respondent.

HARDIN, P. J.:

Defendants requested the referee to find that the settlement agreement omitted a provision to the effect that they might retain

commissions as agents under the agreement of January, 1877, "by inadvertence and the mutual mistake of the parties thereto." There was, at most, a conflict in the evidence upon that subject, and there was not such a preponderance of evidence in favor of defendants as to warrant the conclusion that the refusal of the referee to so find was erroneous. Besides, where it appears, as by some of the evidence it does appear, that the contract is as one of the parties intended to make it, the court will not reform it. (*Bartholomew* v. *Mercantile M. Ins. Co.*, 34 Hun, 265 ; *Paine* v. *Wyman*, 75 N. Y. 593.)

The proof in the case given to secure the reformation does not come up to the degree required by the rule laid down in *Bartholomew* v. *Ins. Co.* (*supra*), and cases there cited. Upon the trial evidence given to support the defendants' averments that the agreement of May, 1883, did not express the true intent of the parties, was received and admissible under that part of the answer which sought a reformation. Although some of the evidence was not admissible on the other issues, its admission is not such an error as requires an interference with the report of the referee. The principal issue in the case turned upon the construction to be given to the contract of settlement of May 23, 1883. Plaintiff and defendants were parties to litigation, and sought to make an amicable adjustment of the controversies, and in the presence of experienced counsel on either side the negotiations were brought to an end, and the instrument prepared under the supervision of their counsel was executed. Its terms and stipulations were matured after much discussion and deliberation. It was prepared to supersede and rescind the other contracts existing, and to produce new relations of the parties to the subject-matters embraced within its terms. We must look at the circumstances surrounding the parties in giving construction to the language used. Defendants' claim to commissions cannot be recognized under the contract of 1877, unless expressly or impliedly reserved by the terms of the new instrument of May, 1883. (*McCreery* v. *Day*, 119 N. Y. 1.) The latter instrument provided in terms that defendants should transfer and assign to plaintiff "all orders received for goods and not filled in full, and hand over and deliver on receipt thereof orders which may be hereafter received by them growing out of their connection with said busi-

ness carried on by them." Then it provides for the payment of
$10,000 in cash by plaintiff, and in addition thereto a note was to
be made by plaintiff for $25,452.98, on time, and for the purpose of
having security for the note the defendants were to "collect the
outstanding accounts, and as fast as collections and those for orders
unfilled at this date are made, to apply on said note till paid, and
when note is paid the balance collected of said accounts to be paid,
and those not collected to be transferred" to plaintiff. No words of
reservation are found in the language used to describe the accounts.
On the contrary, "the collections" are to be applied or transferred
to plaintiff. The defendants expressly stipulated to use all due dili-
gence in collecting such accounts. However, the defendants claim
that the words at the close of the instrument should be construed
to give them a commission of ten per cent on orders executed at
that date. The clause reads, viz.: "All orders up to this date
unexecuted to be filled through the said Prossers as sales agents as
before." Prior to that time the arrangement of the parties was
evidenced by the agreement of the 22d of January, 1877. By turn-
ing to that instrument it is found to provide that defendants should
have the sales in the United States and Canada, and the plaintiff
was to indemnify the defendants from all suits for infringement of
patents, and the plaintiff was not at liberty to sell or give any
license to any persons to use the said brake within the said ter-
ritory without the consent of the defendants and payment
of ten per cent on the amount of any sales. The contract
further provided in terms, viz.: "The said Thomas Prosser &
Son, in consideration of said ten (10) per cent. to be paid them as
aforesaid, and as such agents, do hereby agree to use their best
efforts to promote the sale of said brakes; all canvassing and adver-
tising expenses to be paid by them." The consideration for the ten
per cent commission is thus clearly defined. By the terms of the
compromise or rescinding agreement, the defendants were relieved
from the burdens which they had assumed, as a consideration for
the commission to be received for sales made by them pursuant to
the terms of the agreement of 1877. When the agreement of 1877
was abandoned, by the act of the parties, of course the defendants
ceased to be sales agents; and, under its terms, ceased to be bound
by the stipulations which cast upon them burdens, and were not

required to render the "consideration" theretofore due from them as an equivalent for the ten per cent commission. Under such circumstances it does not seem to be a reasonable construction to hold that the defendants were to receive ten per cent commission upon the unexecuted orders to be thereafter filled. The construction put upon the instrument by the learned referee seems more reasonable. He found : " That said agreement does not provide that defendant should have commissions on unfilled orders," or on " filled orders." He also found that there was no account stated between the parties. Plaintiff objected to the withholding of its money by the defendants, and by receiving part thereof did not forfeit its rights in the sum wrongfully withheld. (*Stenton* v. *Jerome*, 54 N. Y. 480.) Defendants held the moneys of the plaintiff, and their assertion that the lesser sum must be received by the plaintiff in full, did not produce an accord and satisfaction. The case of *Schuyler* v. *Ross* (13 N. Y. Supp. 944) differs from this. There a sale had been made of bark, and the plaintiff, by accepting the check, admitted the measurement claimed to be correct.

*Hills* v. *Sommer* (53 Hun, 392) was a case where a draft was sent for the amount alleged to be the balance for goods sold, after deducting for the parts that were defective, and the defendants disputed the liability for any greater sum than the draft they sent, and plaintiff accepted the same as a compromise of the dispute. Here, the plaintiff did not acquiesce in the claim of the defendants, but objected to the sufficiency of the advances, and expressly notified the defendants that the sums remitted would be credited on account. (*Stenton* v. *Jerome*, 54 N. Y. 480 ; *Ryan* v. *Ward*, 48 id. 204 ; *Nassoiy* v. *Tomlinson*, 65 Hun, 491 ; S. C., 20 N. Y. Supp. 384.) There was a deficiency. The defendants retained money which, by the instrument signed by them, had been assigned to and belonged to the plaintiff, and the part payment thereof to plaintiff did not discharge the defendant's liability. (*Jaffray* v. *Davis*, 48 Hun, 500.) The referee refused to find that defendants expended money for goods ordered, cartage and telegrams in May, subsequent to the nineteenth of May, amounting to $914.92, and refused to find that defendants expended, in June, $408.11, and that such sums were credited on the books of plaintiff. We think such refusals were erroneous and that the evidence warranted the findings requested. Some of the

evidence bearing upon the items is found in the testimony of Prosser to the effect that he was requested to allow the goods ordered for the company to be delivered and that all the goods and expenses mentioned in Exhibits Q and R were delivered and received by plaintiff subsequent to May 23, 1883. Bingham's evidence tends to the same result. The plaintiff has been allowed improperly to recover for the items referred to in Exhibits Q and R, to wit, $914.92 and interest from June 1, 1883, and $46.58 and interest from July 1, 1883. The amount of the items should be deducted from the judgment.

(2) The affidavits and papers used at Special Term were such that the court was called upon to exercise its discretion as to the propriety of granting an extra allowance. (*Burke* v. *Candee*, 63 Barb. 552; *Gooding* v. *Brown*, 21 Wkly. Dig. 46; *Morss* v. *Hasbrouck*, 13 id. 393; *Tolman* v. *S., B. & N. Y. R. R. Co.*, 31 Hun, 403.) It is not apparent that the discretion was abused and, therefore, the order should be affirmed.

MARTIN and MERWIN, JJ., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event, unless plaintiff shall stipulate to modify the report and judgment by deducting $914.92 and interest from June 1, 1883, and $46.58 and interest from July 1, 1883, in which event the judgment as so modified and the order are affirmed, without costs to either party of this appeal.