been a building on the premises in question, which has during the whole of said period been used as a stable by the defendant in connection with the defendant's husband's business of veterinary surgeon; that the defendant is erecting in lieu of the old building a brick and stone structure of one story, which is to be highly sanitary in its construction, and in nowise a violation of any restriction that may exist upon the use of the said premises. There was other evidence of those living in the neighborhood that the business carried on by the defendant's husband is not at all noxious or offensive, and that the construction of the new building would be a great improvement upon the one already on the premises. There is no evidence that the business carried on by the defendant's husband for the past five years has been noxious or offensive, so as to come within the restriction contained in the covenant. Whether or not the proposed building will be a "dangerous, noxious, or offensive establishment" can only be disclosed when it is erected and used. The covenant is that the grantee shall not at any time erect, suffer, or permit on the premises any brewery, etc., or any other dangerous, noxious, or offensive, establishment whatsoever. This covenant is not one that restricts a business which would be injurious or offensive to the neighboring inhabitants, but, after specifying several specific uses to which the property is not to be put, couples with such restricted uses any other dangerous, noxious, or offensive establishment whatsoever; and, while the construction of this covenant would not be governed by the general laws as to nuisances, but by the force and effect of the covenant (Rowland v. Miller, 139 N. Y. 193, 34 N. E. 765, 22 L. R. A. 182), there must be evidence to justify the finding that the building or business to be conducted by the defendant is dangerous, noxious, or offensive.

The question as to the nature of the defendant's business, and as to whether or not it is within the covenant, can be determined upon the trial at Special Term, when the nature of the defendant's business can be inquired into, and the court upon such an investigation can then restrain any use of the building which would be a violation of the covenant. But upon these affidavits I think that the court below was justified in refusing to grant a temporary injunction, and leaving the question to be determined upon the trial.

The order appealed from should therefore be affirmed, with $10 costs and disbursements. All concur.

---

(112 App. Div. 524)

JOHNSTON v. SISTERS OF THE POOR OF ST. FRANCIS.

(Supreme Court, Appellate Division, First Department. April 20, 1906.)

1. WILLS—CONSTRUCTION—DESIGNATION OF LEGATEE.

A bequest to the trustees of St. Francis Hospital, where there is no corporation known as St. Francis Hospital, may properly be paid to the Sisters of the Poor of St. Francis, a corporation owning and controlling a hospital known as St. Francis Hospital.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 1110.]

**2. HOSPITALS—PURPOSES OF CORPORATION—CAPACITY TO TAKE AS LEGATEE.**

A bequest to a corporation owning and controlling a hospital, for the benefit and use of the "Blessed Virgin Mary Purgatorial Fund," where no such fund exists, the only object of a purgatorial fund being the saying of masses for the spiritual welfare of the souls of the dead in purgatory, and the sole purpose of the corporation being the care of the sick, aged, infirm, and poor, is invalid.

O'Brien, P. J., and Ingraham, J., dissenting.

Appeal from Special Term, New York County.

Action by Edward W. S. Johnston, as executor of the estate of Joseph Hughes, deceased, against the Sisters of the Poor of St. Francis for construction of a will. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

John E. Donnelly and Amend & Amend (Alfred J. Amend, on the brief), for appellant.

Edward W. S. Johnston (Lewis Johnston, on the brief), for respondent Johnston.

John H. Rogan, for other respondents.

CLARKE, J. The last will and testament of Joseph Hughes, deceased, contained the following clause:

"Third. I give and devise to my executors hereinafter named, or such one of them as shall qualify, all my real estate situate, lying, and being in the state of New York, in trust, to sell and dispose of the same at public or private sale, and to divide the net proceeds of such sale as follows: Three equal fourth parts thereof to the trustees of St. Francis Hospital in the city of New York for the benefit and use of the Blessed Virgin Mary Purgatorial Fund of said hospital; one equal eighth part thereof to my sister Susan M. Riordan; one equal sixteenth part thereof to my niece, Mary C. Adams; and the remaining one equal sixteenth part thereof to my nephew, William Michael Hughes."

The learned court found as facts that there was no body corporate known as St. Francis Hospital; that the Sisters of the Poor of St. Francis is a domestic corporation, duly organized and existing under the provisions of chapter 201, p. 390, of the Laws of 1866, and the only objects of the said corporation specified in the act of its incorporation are the care of the sick, aged, infirm, and poor; that the object of the testator's bounty is not within the corporate purposes and powers, or any of them, of the defendant, the Sisters of the Poor of St. Francis; that the said corporation maintains a hospital in the city of New York popularly known as St. Francis Hospital; that "there never was, and is not now a Blessed Virgin Mary Purgatorial Fund maintained by the defendant, the Sisters of the Poor of St. Francis, or by said Hospital"; that "the only possible object of a purgatorial fund is the saying of masses for the spiritual welfare of the souls of the dead in purgatory"; and, as conclusions of law, that the devise of bequests to the trustees of St. Francis Hospital for the benefit and use of the Blessed Virgin Mary Purgatorial Fund of said hospital is invalid and void. The appellant duly excepted to such finding, and alone appeals from the judgment entered in accordance with the decision.

Although the will describes the legatee as "the trustees of St. Francis Hospital in the city of New York," and there is no corporate entity known as St. Francis Hospital, and hence no trustees thereof exist, there is no difficulty in identifying the intended object of the testator's bounty, in that it appears that there is a St. Francis Hospital in the city of New York, and that it is maintained by the Sisters of the Poor of St. Francis, a domestic corporation. It being clear that it was the intention of the testator that the managers of the hospital should take the bequest, we can hold the corporation to be the intended legatee. This view is strengthened by the fact that the charter of the corporation provides that "no misnomer of said corporation shall defeat any gift, grant, or devise, provided the intent shall sufficiently appear that any estate or interest was made to be vested in said corporation."

The question remains, was it a valid gift? Was it for an object within one of the corporate purposes? Judge Rapallo, in Holland v. Alcock, 108 N. Y. at page 337, 16 N. E., at page 317, 2 Am. St. Rep. 420, stated the question to be, "whether the grantor or devisor of a fund designed for charity is competent to give, and whether the organized body is endowed by law with capacity to receive and hold and administer the gift." The appellant's charter provides: "The objects of said corporation are the gratuitous care of the sick, aged, infirm, and poor." The gift was "for the benefit and use of the Blessed Virgin Mary Purgatorial Fund of said hospital." It is conceded and established that the only possible object of a purgatorial fund is the saying of masses for the spiritual welfare of the souls of the dead in purgatory. There is no such fund existing. I do not understand that the gift can be held good under the contention that the testator intended to create such a fund; but that it must rest upon the proposition that the bequest would go to the appellant absolutely as a general gift, if the same was donated for an object within any one of its corporate purposes. A corporation's purposes are fixed by its charter and the laws under which it is organized. This corporation is not a religious corporation, and is not organized under the religious corporation law. To constitute such, it must be either, first, an incorporated church, created to enable its members to meet for divine worship or other religious observances; or, second, an incorporated congregation, society, or other assemblage, accustomed to meet for the same purpose. If it were such, a fund of the character intimated might be properly within the objects of the corporation; for certainly to a considerable portion of the community the saying of masses for the poor souls is a most deeply religious observance. But this corporation has for its object the care of the bodies of the living, and not the welfare of the souls of the dead.

In Chamberlain v. Chamberlain, 43 N. Y. 424, cited by appellant, the testator sought to dispose of his residuary estate to the Centenary Fund Society, a Pennsylvania corporation, and the court said:

"The validity of the provisions in favor of this society depends upon its power to take and hold in the manner and for the purpose indicated by the testator."

The court then points out that the society had power to take and hold property for such purpose, within certain limitations as to amount.

So, in Matter of Strickland (Sup.) 17 N. Y. Supp. 304, the testator gave to the trustees of each of four incorporated religious societies a sum of money in trust, to be invested, and the interest to be applied to the support of the pastor in charge. The General Term said:

"The gift in each case was for one or more of the purposes of the incorporation of the institution to which it was made. In the case of each of the four churches it was for the support of the pastor—a recognized and undoubted purpose for which the church was organized—and therefore the gift was not only to the incorporation, but was directly for its benefit."

In Fosdick v. Town of Hempstead, 125 N. Y. 581, 26 N. E. 801, 11 L. R. A. 715, Judge Peckham said:

"The gift, to take effect as an absolute one, must be for some one or all of the purposes for which the corporation was created"; and points out that "the cases of Wetmore v. Barker, 52 N. Y. 459, Le Couteulx v. City of Buffalo, 33 N. Y. 335, Vail v. L. I. R. Co., 106 N. Y. 283, 12 N. E. 607, 60 Am. Rep. 449, were all instances of a gift to a corporation having power to take for the purposes that the gift was intended; and hence a direction accompanying the gift, that it was to be used only for a corporate purpose, or that the income only was to be used, did not create a trust."

In Bird v. Merklee, 144 N. Y., at page 550, 39 N. E., at page 646, 27 L. R. A. 423, Judge Bartlett said:

"If it were necessary in order to sustain the bequest, these words of designation by the testator might be treated as merely precatory; but we think it was entirely competent for him to apply his bounty to the whole or any one of the various purposes for which the corporations are authorized to hold property."

As it seems clear that the object of this gift was not within any of the purposes of this corporation, I find myself, under the authorities cited, in agreement with the learned judge who decided this case at the Special Term, when he said:

"I have searched in vain to try and find some ground upon which I could be justified in upholding this bequest, trying to bring the unquestioned intention of the testator within legal bounds, so that effect may be given to what his undoubted desire was; but I cannot do it."

So far as the suggestion is made by the executor on this appeal as to the proper disposition of this void legacy, it is sufficient to say that, there having been no appeal by any of the parties interested, that question is not before us.

The judgment appealed from should be affirmed.

PATTERSON and LAUGHLIN, JJ., concur.

INGRAHAM, J. The question presented in this case depends upon the construction to be given to the last will and testament of Joseph Hughes, of the city of New York. The testator, after devising certain lands in the state of Pennsylvania, provides:

"I give and devise to my executors hereinafter named, or such one of them as shall qualify, all my real estate situate, lying, and being in the state of New York, in trust, to sell and dispose of the same at public or private sale, and to divide the net proceeds of such sale as follows: Three equal fourth parts thereof to the trustees of St. Francis Hospital in the city of New York for the benefit and use of the Blessed Virgin Mary Purgatorial Fund of said hospital."

—With a bequest of the remaining fourth part to his sister, a nephew and niece. It appeared that there was no St. Francis Hospital in the city of New York, but that there was a corporation incorporated by a special act of the Legislature passed in 1886 under the name of "Sisters of the Poor of St. Francis." The object of the corporation was for the gratuitous care of the sick, aged, infirm, and poor, and for that purpose the corporation maintained a hospital in the city of New York known as St. Francis Hospital, which was a charitable institution for the relief of the suffering poor.

Upon the trial it was admitted that at the time of the death of the testator there was not, is not now, and never was, any body corporate, person or persons, or legal entity known as St. Francis Hospital, but that St. Francis Hospital is a public institution under the charge of and maintained by the defendant, the Sisters of the Poor of St. Francis, a corporation organized and existing under the provisions of chapter 201, p. 390, of the Laws of 1866, and that said corporation maintains a hospital in the city of New York known as St. Francis Hospital, and is the only one of that name. Upon that concession it is quite clear that the testator intended this bequest to the corporation known as the Sisters of the Poor of St. Francis, as they are the ones who maintained the hospital, and they fairly come within the description of the will as the trustees of the hospital; but the court found as a fact that the object of the testator's bounty in the third paragraph of his will was not within the corporate purposes and powers, or any of them, of the defendant, the Sisters of the Poor of St. Francis, and there never was, and is not now, a "Blessed Virgin Mary Purgatorial Fund" maintained by the defendant, the Sisters of the Poor of St. Francis, or by said hospital; that the only possible object of a purgatorial fund is the saying of masses for the spiritual welfare of the souls of the dead in purgatory; and, as a conclusion of law, that the devise or bequest in the third paragraph of the will of three equal fourths of the net proceeds of the sale of all the testator's real estate situate, lying, and being in the state of New York, being the lands and premises described in the fourteenth finding of fact to the trustees of St. Francis Hospital in the city of New York for the benefit and use of the Blessed Virgin Mary Purgatorial Fund of said hospital, is invalid and void; and upon the judgment entered upon this decision the Sisters of the Poor of St. Francis Hospital appeal.

There was under the provisions of this will an equitable conversion of the real property of the testator. The bequest to this hospital was three-fourths of the proceeds upon the sale of this property, which the executors were directed to make, and in determining the question of the validity of this disposition of the testator's property, it should be treated as a bequest of personalty. The testator, therefore, has bequeathed a portion of his estate to trustees of a hospital maintained in the city of New York as a charitable institution for the benefit of the poor, coupled with the provision that this bequest is for the benefit and use of the Blessed Virgin Mary Purgatorial Fund, no such fund being in existence. It is conceded that the testator intended to benefit this corporation, who organized and maintained the hospital, and his direction that the bequest should go to the trustees of the hospital

98 N.Y.S.—34

would be complied with by paying it to the corporation organized for the gratuitous care of the sick, aged, infirm, and poor, who had, to carry out that object of its incorporation, established a hospital known as the Hospital of St. Francis. The learned trial judge, however, was of the opinion that because there was coupled with this gift, which was absolute in form and valid upon its face, the provision that it was for the benefit and use of the Blessed Virgin Mary Purgatorial Fund of said hospital, the gift was invalidated. We must not forget that in considering a will we are to give force to the intention of the testator, and if that intention can be ascertained from the instrument itself effect should be given to it, unless it violates some legal rule. Crozier v. Bray, 120 N. Y. 366, 24 N. E. 712. It is quite clear that it was the primary intention of this testator to give to the trustees or persons maintaining this hospital a portion of his estate, and the question that is presented is whether this intention is to be defeated because he has added to the gift a proviso that the provision was for the benefit of a particular fund, which he apparently supposed was maintained by those who maintained the hospital. It appeared by the testimony of the secretary of the corporation that it conducted a hospital known as St. Francis Hospital; that there was a chapel connected with said hospital, in which there were devotions several times a day; that there was a morning mass; that the sisters say the office at various times of the day, and there are always public devotions in which prayers are said for the poor souls in purgatory. There was thus maintained a chapel in which there was daily religious services, conducted in accordance with the beliefs of the church of which these sisters were affiliated, for the souls of the dead, maintained by the sisters as a part of the hospital that they organized and maintained to carry out the purposes for which they were incorporated—the gratuitous care of the sick, aged, infirm, and poor. Considering the belief of the church with which these sisters were affiliated, I do not think we can say that the organization and maintenance of a chapel for the benefit of the souls of those who come under their care was not within the object for which the corporation was incorporated. The gratuitous care of the sick, aged, infirm, and poor might well involve religious services for their benefit, either before or after death, and where a body of religious persons, with a belief in the efficacy of religious ceremonies and observances for the amelioration of the condition of the poor and helpless, maintain a chapel in which is conducted religious services for the benefit of those in their charge, such services may well come within the definition of the gratuitous care for the sick, aged, infirm, and poor. That this corporation was incorporated for purely charitable purposes is conceded, and that the lives of those connected with it are devoted to that purpose was apparently known to the testator, and he wished to aid, so far as in his power, the members of this corporation in the work to which they had devoted their lives. He evidently believed in the efficacy of those religious observances as a benefit to those for whom they were celebrated, and it was his intention that this portion of his property should be devoted to that purpose. To sustain this as a bequest to this corporation will accomplish this object, and I think it would

be extremely unfortunate if the court should be compelled to frustrate this intention because of the form used in the bequest.

It is a well-settled principle that where there is a bequest or devise to an individual sufficient to vest the bequest in the legatee, a subsequent provision will not cut down that bequest or devise, unless such an intention is clearly expressed.   Clarke v. Leupp, 88 N. Y. 228.   In the will before the court in that case there was a bequest to the testator's wife of all his property, real and personal, and his wife was appointed sole executrix "to take charge of my property after my death, and retain or dispose of the same for the benefit of herself and children above named"; and it was held that the entire estate vested in his wife upon the testator's death; the court saying:

"It is well settled by a long succession of well-considered cases that when the words of the will in the first instance clearly indicate a disposition in the testator to give the entire interest, use, and benefit of the estate absolutely to the donee, it will not be restricted or cut down to any less estate by subsequent or ambiguous words, inferential in their intent."

In Clay v. Wood, 153 N. Y. 134, 47 N. E. 274, it is said:

"Where there is an absolute gift of real or personal property, in order to qualify it or to cut it down the latter part of the will should show an equally clear intention to do so, by the use of words definite in their meaning, and by expressions which must be regarded as imperative.   *   *   *   Whether the precatory words in a will shall be accorded such force as to deprive the donee of the absolute right of disposal, and thereby qualify the beneficial interest in the gift, must be determined in connection with what may be gathered from the rest of the will as an intention which would be reconcilable with the idea of a trust imposed upon the legal estate.   Where to impose such a trust would be to nullify previous expressions in the will, and to create a repugnancy between its different parts, then the rules of construction forbid the attempt."

In Chamberlain v. Chamberlain, 43 N. Y. 429, it was held that a bequest, although in terms to the trustee of a corporation, is in legal effect a gift to the corporation, vesting the legacy in the corporate body.   In that case the bequest was to the trustees of Chamberlain Institute, to be by such trustees permanently invested in bond and mortgage, the principal to be kept permanently invested, and the interest and income thereof to be used in the payment of teachers and the purchase of books for a library institution; but the court held that this bequest was for the benefit of this institution, and was, in legal effect, a gift to the corporation, vesting the legacy in the corporate body; and this same rule was applied by the General Term in the Fifth Department.   In re Strickland's Estate (Sup.) 17 N. Y. Supp. 304.   It has been definitely settled in this state that there is nothing illegal in a testator making provision for masses to be said for the repose of the soul after death (Gilman v. McArdle, 99 N. Y. 451, 2 N. E. 464, 52 Am. Rep. 41); and a bequest being to a corporation competent to take, there being a defined beneficiary, there is nothing in this will, as I view it, which creates a trust, or which limits the power of the beneficiary in the use of the money after it is received.   In Holland v. Alcock, 108 N. Y. 312, 16 N. E. 305, 2 Am. St. Rep. 420, where it was held that the absence of a defined beneficiary was a fatal objection to an attempt to create a trust for the purposes of prayer offered in a Roman Catholic Church for the repose of the testator's soul and the

souls of his family, and the souls of all others who may be in purgatory, it seems to have been recognized that such a bequest would be valid if to an incorporated church, so as to entitle it to claim the fund.

My view is, therefore, that there was here a bequest of personal property to a defined beneficiary, to be used for the purposes for which it was incorporated, and, as there was nothing in the will sufficient to cut down or limit the bequest, it is valid, and the judgment appealed from should be reversed, and the decree entered upholding the bequest, and directing that it be paid to the defendant, the Sisters of the Poor of St. Francis; with costs to the plaintiff and to the appellant to be paid out of the estate.

O'BRIEN, P. J., concurs.